Daniel Sadeh, Esq.
**HALPER SADEH LLP**
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSHUA WATERS,<br><br>    Plaintiff,<br><br>v.<br><br>TETRAPHASE PHARMACEUTICALS, INC., LARRY EDWARDS, L. PATRICK GAGE, GAREN BOHLIN, STEVEN BOYD, JEFFREY A. CHODAKEWITZ, JOHN G. FREUND, GERRI HENWOOD, GUY MACDONALD, KEITH MAHER, and NANCY J. WYSENSKI,<br><br>    Defendants. | Case No:<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Joshua Waters ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## **NATURE OF THE ACTION**

1.      This is an action against Tetraphase Pharmaceuticals, Inc. ("Tetraphase" or the "Company"), and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Tetraphase by AcelRx Pharmaceuticals, Inc. ("AcelRx") and Consolidation Merger Sub, Inc. ("Merger Sub"), an indirect wholly-owned subsidiary of AcelRx.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York.[1]

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

---

[1] For example, in 2017, the Company reportedly participated in two conferences in New York City. *See* Tetraphase Pharmaceuticals, Inc., *PRESS RELEASES*, https://ir.tphase.com/news-releases/news-release-details/tetraphase-pharmaceuticals-present-upcoming-investor-2 (last visited Apr. 24, 2020).

2

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Tetraphase's common stock.

7. Defendant Tetraphase is a biopharmaceutical company that develops various antibiotics for the treatment of serious and life-threatening multidrug-resistant infections. The Company is incorporated in Delaware. The Company's common stock trades on the Nasdaq Global Select Market ("NASDAQ") under the ticker symbol, "TTPH."

8. Defendant Larry Edwards ("Edwards") is the Chief Executive Officer ("CEO") of the Company.

9. Defendant L. Patrick Gage ("Gage") is Chairman of the Board of the Company.

10. Defendant Garen Bohlin ("Bohlin") is a director of the Company.

11. Defendant Steven Boyd ("Boyd") is a director of the Company.

12. Defendant Jeffrey A. Chodakewitz ("Chodakewitz") is a director of the Company.

13. Defendant John G. Freund ("Freund") is a director of the Company.

14. Defendant Gerri Henwood ("Henwood") is a director of the Company.

15. Defendant Guy Macdonald ("Macdonald") is a director of the Company.

16. Defendant Keith Maher ("Maher") is a director of the Company.

17. Defendant Nancy J. Wysenski ("Wysenski") is a director of the Company.

18. Defendants Edwards, Gage, Bohlin, Boyd, Chodakewitz, Freund, Henwood, Macdonald, Maher, and Wysenski are collectively referred to herein as the "Individual Defendants."

19. Defendants Tetraphase and the Individual Defendants are collectively referred to herein as the "Defendants."

## OTHER RELEVANT ENTITIES

20. AcelRx is a specialty pharmaceutical company that focuses on the development and commercialization of therapies for the treatment of acute pain. AcelRx is incorporated in Delaware with principal executive offices located in Redwood City, California. AcelRx's common stock trades on the NASDAQ under the ticker symbol, "ACRX."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

21. On March 16, 2020, Tetraphase announced the execution of a definitive merger agreement pursuant to which AcelRx would acquire Tetraphase in a stock for stock transaction. Under the terms of the agreement, Tetraphase stockholders would receive, for each share of Tetraphase common stock, 0.6303 of a share of AcelRx common stock, and one contingent value right, which would entitle the holders to receive aggregate payments of up to $12.5 million for the achievement of future XERAVA™ net sales milestones starting in 2021. The press release announcing the merger states, in pertinent part:

> **Tetraphase Pharmaceuticals and AcelRx Pharmaceuticals Enter into Definitive Merger Agreement**
>
> **AcelRx to Acquire Tetraphase in an all-stock transaction**
>
> **Tetraphase equity holders to own 14.6% of the combined company and receive Contingent Value Rights worth up to $12.5 Million**
>
> **Acquisition Expected to Close in Q2 2020**
>
> **Companies Enter into a Co-Promotion Agreement**
>
> March 16, 2020 07:30 AM Eastern Daylight Time
>
> WATERTOWN, Mass.--(BUSINESS WIRE)--Tetraphase Pharmaceuticals, Inc. (Nasdaq: TTPH), a biopharmaceutical company focused on commercializing its novel tetracycline XERAVA to treat serious and life-threatening infections, today announced the execution of a definitive merger agreement pursuant to which

AcelRx Pharmaceuticals (Nasdaq: ACRX) would acquire Tetraphase in a stock for stock transaction. Under the terms of the agreement, Tetraphase stockholders will receive, for each share of Tetraphase common stock, 0.6303 of a share of AcelRx common stock, valued at approximately $14.4 million as of the close of trading on March 13, 2020, and one contingent value right (CVR), which would entitle the holders to receive aggregate payments of up to $12.5 million for the achievement of future XERAVA™ net sales milestones starting in 2021. The transaction was unanimously approved by both the AcelRx and Tetraphase boards of directors and is expected to close in the second quarter of 2020. Select Tetraphase stockholders and warrant holders, including Armistice Capital, LLC, holding in the aggregate approximately 31% of Tetraphase's outstanding common stock, have signed voting agreements in favor of the transaction.

Concurrently with signing the merger agreement, Tetraphase and AcelRx entered into a co-promotion agreement to market and promote XERAVA™ for the treatment of complicated intra-abdominal infections (cIAI) and DSUVIA® for the treatment of acute pain in medically supervised settings. The co-promotion agreement will allow the AcelRx and Tetraphase teams to benefit immediately from the promotion of multiple products, leverage each company's customer relationships, and create efficiencies among commercial teams. The combined sales team will cover in excess of 70% of each company's originally targeted hospitals.

"We are excited to have reached agreement with Tetraphase, a company with a well-established U.S. salesforce and a high-growth hospital product that complements AcelRx's commercial strategy," said Vince Angotti, Chief Executive Officer of AcelRx. "This transaction highlights our focus on efficiently commercializing DSUVIA with a salesforce promoting multiple products and is the first step in our plan to create a growth platform to further consolidate hospital-focused pharmaceutical companies and products. We look forward to integrating XERAVA and the existing Tetraphase commercial infrastructure with our own as we strengthen our position on promoting innovative products to healthcare institutions allowing patients access to new and improved treatments."

Based on the closing price of AcelRx stock on March 13, 2020, the stock consideration to be received by Tetraphase equityholders is valued at approximately $14.4 million, with approximately $7.4 million of this amount allocated to the Company's outstanding common stock warrants. In the merger, Tetraphase stockholders would also be entitled to receive, for each share of Tetraphase common stock, one non-tradeable CVR, the holders of which will be entitled to receive payments of up to an additional $12.5 million in the aggregate upon the achievement of net sales of XERAVA™ in the United States of at least (i) $20 million during 2021, (ii) $35 million during any year ending on or before December 31, 2024 and (iii) $55 million during any year ending on or before December 31, 2024. The total cost synergy expectation from the combined company exceeds 90% of the Tetraphase operating expenses and are expected to be fully realized in 2021.

Closing of the transaction is subject to specified closing conditions, including Tetraphase having a minimum amount of net cash as of the closing and approval by Tetraphase stockholders. Upon the closing of the transaction, Tetraphase will become a privately held company and shares of Tetraphase's common stock will no longer be listed on any public market. Subject to certain limited exceptions, the CVRs will be non-transferable.

Janney Montgomery Scott is acting as financial advisor to Tetraphase and has rendered a fairness opinion to Tetraphase's board of directors in connection with the transaction. Wilmer Cutler Pickering Hale and Dorr LLP is acting as legal advisor to Tetraphase in connection with the transaction.

**About XERAVA™**

XERAVA (eravacycline for injection) is a tetracycline class antibacterial indicated for the treatment of complicated intra-abdominal infections (cIAI) in patients 18 years of age and older. XERAVA was investigated for the treatment of cIAI as part of the Company's IGNITE (Investigating Gram-Negative Infections Treated with Eravacycline) Phase 3 program. In the first pivotal Phase 3 trial in patients with cIAI, twice-daily intravenous (IV) XERAVA met the primary endpoint by demonstrating statistical non-inferiority of clinical response compared to ertapenem and was well-tolerated. In the second Phase 3 clinical trial in patients with cIAI, twice-daily IV XERAVA met the primary endpoint by demonstrating statistical non-inferiority of clinical response compared to meropenem and was well-tolerated. In both trials, XERAVA achieved high cure rates in patients with Gram-negative pathogens, including resistant isolates.

\*   \*   \*

**About Tetraphase Pharmaceuticals, Inc.**

Tetraphase Pharmaceuticals, Inc., is a biopharmaceutical company using its proprietary chemistry technology to create novel tetracyclines for serious and life-threatening conditions, including infections caused by many of the multidrug-resistant bacteria highlighted as urgent public health threats by the World Health Organization and the Centers for Disease Control and Prevention. The Company has created more than 3,000 novel tetracycline compounds using its proprietary technology platform. Tetraphase's lead product XERAVA™ is approved for the treatment of complicated intra-abdominal infections by the U.S. Food and Drug Administration and the European Medicines Agency. The Company's pipeline also includes antibiotics TP-271 and TP-6076, which are Phase 2 ready, and TP-2846, which is in preclinical testing for acute myeloid leukemia. The Company intends to out license its pipeline candidates. Please visit www.tphase.com for more company information.

22. On April 21, 2020, Defendants caused to be filed with the SEC a Form S-4 Registration Statement under the Securities Act of 1933 (the "Registration Statement") in connection with the Proposed Transaction, which amended the Form S-4 Registration Statement filed by Defendants with the SEC on April 6, 2020.

**B. The Registration Statement Contains Materially False and Misleading Statements and Omissions**

23. The Registration Statement, which recommends that Tetraphase shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (1) Tetraphase's, AcelRx's, and the combined company's financial projections; (2) the financial analyses performed by Tetraphase's financial advisor, Janney Montgomery Scott LLC ("Janney"), in connection with its fairness opinion; (3) the sales process leading up to the Proposed Transaction; and (4) potential conflicts of interest involving the Company's undisclosed additional financial advisors.

24. The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Background of the Merger; (ii) Recommendation of the Tetraphase Board; the Tetraphase Board's Reasons for the Merger; (iii) Opinion of Janney Montgomery Scott LLC, Tetraphase's Financial Advisor; and (iv) Certain Information Provided by the Parties.

25. Unless and until the material misstatements and omissions (referenced below) are remedied before the June 8, 2020 shareholder vote, Tetraphase shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

1. **Material Omissions Concerning Tetraphase's, AcelRx's, and the Combined Company's Financial Projections**

26. The Registration Statement omits material information concerning Tetraphase's, AcelRx's, and the combined company's financial projections.

27. The Registration Statement provides that:

> In connection with its evaluation of the Merger, the Tetraphase Board considered unaudited, non-public financial projections prepared by (i) Tetraphase management with respect to Tetraphase as a standalone company and (ii) AcelRx management with respect to (a) AcelRx as a standalone company and (b) the combined company, which was also used for the purposes of Janney's financial analyses and opinion (which opinion is attached to this proxy statement/prospectus as *Annex E*). We refer to these financial projections as the management projections.

28. The Registration Statement presents tables setting forth purported summaries of the management projections.

29. The Registration Statement, however, fails to disclose the following concerning the management projections: (1) all line items used to calculate (i) EBIT, and (ii) Unlevered Free Cash Flow; and (2) a reconciliation of all non-GAAP to GAAP metrics.

30. When a company discloses non-GAAP financial metrics in a Registration Statement that were relied upon by its board in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be

8

misleading and "crowd out" more reliable GAAP information.[2]

31. The disclosure of Tetraphase's, AcelRx's, and the combined company's projected financial information is material because it would provide Tetraphase shareholders with a basis to project the future financial performance of Tetraphase and the combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by the Company and its financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction. This financial information is also material because the Proposed Transaction is structured as a stock for stock transaction pursuant to which Tetraphase stockholders are expected to own approximately 14.6% of the combined company.

32. Accordingly, in order to bring the Registration Statement into compliance with SEC regulations, as well as to cure the materially misleading nature of the management projections, Defendants must provide a reconciliation table of the aforementioned non-GAAP metrics to their most comparable GAAP metrics. Defendants must also disclose the line item projections that were used to calculate these non-GAAP metrics. Such projections are necessary to make the non-GAAP

---

[2] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Apr. 24, 2020) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

projections included in the Registration Statement not misleading.

33. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Tetraphase shareholders.

### 2. Material Omissions Concerning Janney's Financial Analyses

34. In connection with the Proposed Transaction, the Registration Statement omits material information concerning analyses performed by Janney.

35. The Registration Statement fails to disclose the following concerning Janney's "*Standalone Discounted Cash Flow Analysis*": (1) all line items used to calculate the future cash flows of the Company from June 30, 2020 through December 31, 2024; (2) the illustrative terminal value of the Company in the year 2024; (3) the individual inputs and assumptions underlying the (i) Enterprise Value/Revenue exit multiple range of 2.25x to 2.75x; and (ii) range of discount rates of 17.6% to 21.6%; and (4) the net debt and net cash of the Company.

36. The Registration Statement fails to disclose the following concerning Janney's "*Description of Certain Pro Forma Discounted Cash Flow Assumptions*": (1) all line items used to calculate the future pro forma cash flows of both Tetraphase and AcelRx from June 30, 2020 through December 31, 2024; (2) the operational synergies expected to be achieved as a result of the Proposed Transaction; (3) the illustrative terminal value of the pro forma combined entity in the year 2024; (4) the individual inputs and assumptions underlying the (i) Enterprise Value/Revenue exit multiple range of 2.25x to 2.75x; and (ii) range of discount rates of 14.7% to 18.7%; and (5) the net debt and net cash of the pro forma combined entity.

37. The Registration Statement fails to disclose the individual multiples and financial metrics of each transaction and company utilized by Janney in its "*Selected Precedent Transactions Analysis*[,]" and "*Selected Public Companies Analysis*[.]"

38. The Registration Statement fails to disclose the following concerning Janney's

10

"*Premiums Paid Analysis*": (1) the transactions observed by Janney in its analysis; and (2) the individual premiums paid in each of the transactions.

39. The valuation methods, underlying assumptions, and key inputs used by Janney in rendering its purported fairness opinion must be fairly disclosed to Tetraphase shareholders. The description of Janney's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Tetraphase shareholders are unable to fully understand Janney's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Tetraphase shareholders.

### 3. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

40. The Registration Statement omits material information concerning the sales process leading up to the Proposed Transaction.

41. The Registration Statement discloses that Tetraphase entered into a confidentiality agreement with AcelRx "which did not include a standstill."

42. The Registration Statement provides that the Company entered into confidentiality agreements with various parties leading up to the Proposed Transaction, including, but not limited to, Company B, Company C, Company F, Company G, Company I, Company K, Company L, and Company P.

43. The Registration Statement, however, fails to disclose whether the Company's confidentiality agreements contained standstill provisions with "don't ask, don't waive" provisions (including their time of enforcement) that would preclude interested parties from making superior offers for the Company.

11

44. Without this information, Tetraphase's shareholders may have the mistaken belief that potential buyers are or were permitted to submit superior proposals for Tetraphase, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable Tetraphase shareholder would want to know, prior to voting for or against the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

45. The Registration Statement provides that various prospective buyers made offers, proposals, or indications of interest to acquire Tetraphase or certain of its assets in 2019 and 2020.

46. The Registration Statement, however, fails to disclose the terms and values of all such indications and proposals provided to Tetraphase during the process leading up to the Proposed Transaction.

47. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Tetraphase shareholders.

### 4. Material Omissions Concerning Potential Conflicts of Interest Involving the Company's Undisclosed Additional Financial Advisors

48. The Registration Statement omits material information concerning potential conflicts of interest involving the Company's undisclosed additional financial advisors.

49. According to the Registration Statement, the Company retained various additional financial advisors during the Company's strategic review process leading up to the Proposed Transaction, including "Financial Advisor A," "Financial Advisor B," and "Financial Advisor C" (the "Additional Financial Advisors").

50. The Registration Statement, however, fails to disclose the following concerning the Additional Financial Advisors: (1) their identities; (2) the amount of compensation they have each received or will receive in connection with their retention by the Company; (3) the amount each

has received as compensation that is contingent upon the consummation of the Proposed Transaction; and (4) whether any of the Additional Financial Advisors have performed past services for any parties to the Proposed Transaction and/or their affiliates or Armistice Capital LLC,[3] including the timing and nature of those services and the amount of compensation received for providing such services.

51. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on the Board's recommendation concerning the Proposed Transaction.

52. The omission of the above-referenced information renders the Registration Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to Tetraphase shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

53. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

54. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section

---

[3] Armistice Capital is the Company's largest stockholder with an approximate 19.6% ownership interest in the Company as of March 31, 2020.

14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

55. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

56. The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

57. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

58. Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

59. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

60. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the

14

Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

61. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

62. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Registration Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

63. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual

15

Defendants.

64. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

65. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: April 24, 2020

Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
zhalper@halpersadeh.com

*Counsel for Plaintiff*